# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8949 | **DATE** | 9/24/2003 |
| **CASE TITLE** | | Elliott vs. Baker | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for leave to proceed in forma pauperis is granted (3-1). Plaintiff's claims regarding the incidents of September-November 2002, 4/5/01, 7/2001 and 5/2002 are dismissed in part as detailed in the Memorandum Opinion and Order. Plaintiff is directed to file a separate supplement to his complaint on or before 10/22/03 with regard to the 7/2001, 11/2001, 1/30/02 and 5/6/02 incidents. Plaintiff's motion for appointment of counsel is denied (7-1) without prejudice to renewal following defendant's filing of responsive pleadings so that the Court can make a proper determination whether appointed counsel is necessary. Motion to waive copies is denied. Summons shall not issue at his time (8-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 2 5 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | AY | 10 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| OR | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED
SEP 2 5 2003

| | |
|---|---|
| DENNIS J. ELLIOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 02 C 8949 |
| ) | |
| LINDA R. BAKER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Dennis Elliott is a resident of the Illinois Department of Human Services' Treatment and Detention Facility, located in Joliet, which houses persons detained under the Illinois Sexually Violent Persons Commitment Act. Elliott, a frequent litigant in this Court, filed a *pro se* lawsuit in December 2002 naming over sixty defendants, along with a motion for leave to proceed *in forma pauperis*. Elliott also asked the Court to foot the bill for duplicating the complaint so that it could be served on the defendants.

On February 24, 2003, the Court entered an order noting that Elliott's complaint, which described ten or so separate incidents between October 2000 and May 2002, "lumped large groups of defendants together ... without making any effort to distinguish their respective roles" in the various incidents. Order of Feb. 24, 2003. The Court stated that it was unwilling to grant Elliott leave to proceed *in forma pauperis* "without a reasonable attempt on his part to identify, to the best of his ability, each defendant's role in the various events at issue." We therefore directed Elliott to file an amended complaint within twenty-eight days.

10

After seeking and obtaining an extension of time, Elliott filed an amended complaint on May 4, 2003. The Court has spent a great deal of time reviewing and considering the amended complaint and has made every effort to give Elliott the benefit of the doubt and to construe the allegations of the amended complaint liberally. But the fact is that Elliott has largely ignored the Court's directive. As will be seen momentarily, he persists in suing many of the defendants in large groups while making only the barest of attempt to distinguish their relative roles.

Because Elliott has sought leave to proceed *in forma pauperis,* the Court reviews the amended complaint to determine whether it is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. §1915(e)(2). The law permits the Court to address this on a claim-by-claim basis. *See House v. Belford,* 956 F.2d 711, 718 (7th Cir. 1992).

The amended complaint names sixty-six defendants plus other "unknown persons." Elliott alleges that the defendants participated in an ongoing effort to retaliate against him for exercising his First Amendment rights, specifically, his attempts to challenge at the institution and in court certain defendants' alleged loss, misplacement, or destruction of his property, which he says he needed to facilitate his defense of the civil commitment proceedings that landed him at the TDF. The sixty-six named defendants include DHS officials; Liberty Healthcare Corporation, the contractor responsible for sexual offender treatment at the TDF, and a number of Liberty employees; Addus Healthcare Corporation, the contractor responsible for medical and dental care at the TDF, and a number of its employees; and other persons who appear to be DHS employees who work at the TDF. Taken as a group, it is likely that the defendants constitute a significant percentage of the administration and staff of the TDF who have had occasion to deal with Elliott.

As indicated earlier, Elliott has persisted in lumping together large groups of defendants without making any effort to describe their particular roles in the actions of which he complains. Nonetheless, several separate incidents are discernable. Before addressing the consequences of Elliott's continued lumping of defendants, we address each separate incident to determine the extent to which the complaint meets the standards for dismissal set forth in §1915(e)(2).

Elliott says he was transferred to the TDF (then located in Sheridan, Illinois) on September 1, 2000, when a petition was filed to commit him under the SVPCA. Am. Cplt., ¶74. He says that shortly after that, his property was lost, misplaced, or destroyed by unknown persons. *Id.*, ¶75. He filed grievances and made other complaints which put several of the defendants on notice of the losses. *Id.*, ¶¶76, 78. He alleges that defendant Pedersen, his primary therapist between September and November 2000, helped him try to locate the property. *Id.*, ¶77. He alleges, however, that several defendants essentially ignored unspecified orders from state court which evidently had something to do with his property (exactly what is unclear), and as a result, Elliott says, he was unable to participate actively in the SVPCA commitment proceedings and as a result he was ordered detained. *Id.*, ¶79. These allegations are insufficient to give rise to a claim against Pedersen, Crouch, Eisenfelder, Heinze, Wood, Budz, Glotz, Monahan, Burkowski, Steiner, and Baker, the defendants named in ¶¶74-79. Elliott alleges no wrongdoing other than the violation of state court orders. The Court fails to see how this could give rise to a federal claim standing alone. To the extent that Elliott is suggesting a due process violation stemming from alleged interference with his access to the courts, the claim is time-barred, as the conduct occurred at the latest in November 2000, but Elliott did not file suit until December 10, 2002, beyond the two-year statute of limitations that applies to §1983 claims in this state.

3

Elliott next alleges that when the SVPCA program was moved to Joliet, he continued to seek redress for the loss of his personal property and that this led to an ongoing pattern of retaliation. *Id.*, ¶80. The first incident took place in January 2001. Elliott says that at the direction of defendant Budz, the DHS TDF director, defendants Stewart and Clairmont, apparently DHS employees, locked him in his cell for refusing to accept a cellmate, a requirement he says was imposed only because he is white (Elliott says that all black inmates have single rooms). *Id.*, ¶81. He alleges that Stewart, Clairmont, Budz, and defendants Toole (a DHS employee) and Glotz (the TDF's security director) failed to adhere to what he characterizes as the procedures for imposing "seclusion" that are established by state statute. *Id.*, ¶82. These allegations are insufficient to state a claim against Toole and Glotz, whose participation is not alleged, much less identified. *See, e.g., Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) (personal involvement required for liability under §1983). They conceivably may be sufficient to state a §1983 claim, however, against Budz, Stewart, and Clairmont.

The next incident was on April 5, 2001. Elliott says that on that date, he was summoned before the TDF's "behavioral committee" for allegedly violating a rule requiring him to be tested for tuberculosis. He explained that he had refused the test because he had a prior pulmonary illness that would cause a false positive, and the test would put his health at risk in some unspecified way. He was nonetheless found guilty of an infraction and was ordered to submit to the test or face "permanent seclusion," and he seems to accuse several of the defendants of wrongfully disbelieving his assertions. Am. Cplt., ¶¶88-90. It does not appear, however, that "permanent seclusion" was in fact ordered – as will be seen momentarily, Elliott complains of an incident about a month later when he says he was *put into* seclusion improperly. *See id.* ¶84.

4

This suggests that Elliott submitted to the tuberculosis test. We assume for purposes of discussion that the Fourteenth Amendment's "deliberate indifference" standard applies to the allegedly improper medical treatment. *See, e.g., Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002) (pretrial detainee). To state a claim, Elliott would have to allege that he suffered some harm as a result of being given the test, *see Babcock v. White*, 102 F.3d 267, 270-72 (7th Cir. 1996) (Eighth Amendment deliberate indifference case), and here he has alleged none. He has provided no basis to pursue a claim against any of the defendants named with regard to the April 5, 2001 incident: Vance, Khan, Shafi, Heinze, Toole, Brucker, Proctor, Glotz, Wood, Budz, Addus Healthcare, and various unknown defendants.

The next incident took place on May 9, 2001. Elliott alleges that when he refused to strip down on command, defendants Brown, Puchalski, and Martin were ordered to shake down his cell. They supposedly notified Toole, Wood, Heinze, Glotz, Budz, and Marx of Elliott's refusal of the command, and as a result he was placed in seclusion. Am. Cplt., ¶¶84-86. These allegations do not state a claim against Brown, Puchalski, or Martin with regard to the shakedown, as Elliott does not claim that he was harmed by the shakedown itself. Elliott generally accuses Toole, Wood, Heinze, Glotz, Budz, and Marx of ordering the seclusion and Brown, Puchalski and Martin of carrying it out.

The next incident happened in July 2001. Elliott says he was summoned before the TDF behavioral committee for throwing a softball over a fence. He says this was actually an accident but that seven of the defendants – Harvel, Southward, Godfrey, Kerr, Haage, Thompson and Graham – somehow together wrote a single incident report suggesting that he had done it on purpose. Am. Cplt., ¶91. Elliott contends that he was not notified of the pending charges and

5

was not allowed to question the witnesses against him, and he says that it was clear to him that the minds of the committee members – Bronstein, Stewart, Heinze, Proctor, and other unknown persons – had been made up before he appeared. Elliott was denied yard privileges for some unspecified period and was "demoted in status" for what he says was a violation of a non-existent rule. *Id.*, ¶¶91-92. The Court will discuss later in this Opinion with Elliott's accusation that seven defendants wrote a false report. Elliott's allegation that he was not allowed to question his accusers does not give rise to a due process claim; the Seventh Circuit recently noted that a prisoner does not have the right to confront or cross-examine the witnesses against him at a disciplinary hearing, *see Piggie v. Cotton*, ___ F.3d ___, 2003 WL 22053414, at *3 (7th Cir. July 18, 2003), and there is no reason to believe that a person in Elliott's shoes has any greater entitlement. His allegations of lack of notice and bias, however, may give rise to a potential claim against the behavioral committee members.

Elliott says that on November 28, 2001, he was again summoned before the behavioral committee and was advised that he had been accused of the offense of "insolence" for allegedly calling Cobb, a DHS employee, a vulgar name. Elliott says that this was a false report made up by Cobb. The committee, consisting of defendants Heinze, Brucker, Proctor, Sun, Finn, Guest, Chakin, Travis, Evenson, Dobier, Speaker, and Washington, nonetheless found Elliott guilty and reduced him in status. Am. Cplt., ¶93. Again, however, Elliott does not identify any actual consequences that this reduction had.

On January 30, 2002, Elliott says, he was once again summoned before the committee. He says he was accused of committing an "offense in violation of state or federal law," but he does not say what it was. He claims he was not given written notice of the charge and was not

6

allowed to present witnesses or evidence. He was found guilty by committee members Proctor, Brucker, Toole, Sun, Dobier, Heinze, and Travis, was again "demoted in status," and lost postage privileges for one year. *Id.*, ¶95.

Elliott says that on March 27, 2002, he was brought before the committee for three rule infractions, in which he was accused in some unspecified way of attempting to introduce some sort of contraband into the TDF. Elliott says this was a false accusation. *Id.*,¶96. Elliott says these claimed infractions "may have been dismissed," *id.*, and he identifies no adverse consequence of any type that he experienced as a result of the charges. He cannot pursue a claim arising from these allegations against Maun, Proctor, Brucker, and Toole, the defendants alleged to have participated.

Finally, on May 6, 2002, Elliott says, he was once again summoned before the behavioral committee for the alleged infraction of "lying to staff." Defendants Haage, Kerr, Graham, Olsen and Collins are said to have written (together?) a false incident report accusing Elliott of falsely denying having his unit's typewriter. Before the committee, Elliott gave his side of the story. He alleges that the committee members (Maun, Hopson, Budz, Monahan, Proctor, Brucker, Dobier, Sun, Travis, Finn, Guest, Toole, and unknown persons) found him guilty and gave him a status reduction with unspecified consequences and denied privileges in some manner that he does not specify. *Id.*, ¶97.

In short, Elliott has not stated a federal claim with regard to the alleged defiance of the state court's orders regarding his property, Am. Cplt., ¶¶74-79; against Toole or Glotz with regard to the January 2001 incident, *id.*, ¶82; against any of the defendants -- Vance, Khan, Shafi, Heinze, Toole, Brucker, Proctor, Glotz, Wood, Budz, Addus Healthcare, or unknown persons –

7

with regard to the April 5, 2001 incident, *id.*, ¶¶88-90; against Brown, Puchalski, or Martin with regard to the May 9, 2001 incident, *id.*, ¶¶84-86; or against any of the defendants – Maun, Proctor, Brucker, or Toole – with regard to the March 27, 2002 incident, *id.*, ¶96. Those claims are dismissed pursuant to §1915(e)(2).

This leaves the following matters as to which a claim *may* be stated:

| Date of incident | Nature of claim | Defendants named |
|---|---|---|
| January 2001 | Imposition of seclusion / Equal Protection; First Amendment retaliation | Budz, Stewart, Clairmont |
| May 9, 2001 | Imposition of seclusion / First Amendment retaliation | Toole, Wood, Heinze, Glotz, Budz, Marx, Brown, Puchalski, Martin |
| July 2001 | Making false report / First Amendment retaliation | Harvel, Southward, Godfrey, Kerr, Haage, Thompson, Graham |
|  | Imposition of discipline / Due Process; First Amendment retaliation | Bronstein, Stewart, Heinze, Proctor, unknown persons (behavioral committee members) |
| November 28, 2001 | Making false report | Cobb |
|  | Imposition of discipline / First Amendment retaliation | Heinze, Brucker, Proctor, Sun, Finn, Guest, Chakin, Travis, Evenson, Dobier, Speaker, Washington (behavioral committee members) |
| January 28, 2002 | Imposition of discipline / Due Process; First Amendment retaliation | Proctor, Brucker, Toole, Sun, Dobier, Heinze, Travis (behavioral committee members) |
| May 6, 2002 | Making false report | Haage, Kerr, Graham, Olsen, Collins |
|  | Imposition of discipline / First Amendment retaliation | Maun, Hopson, Budz, Monahan, Proctor, Brucker, Dobier, Sun, Travis, Finn, Guest, Toole, and unknown persons (behavioral committee members) |

By our count, this leaves thirty-seven defendants for claims arising from six incidents.

The Court is unwilling to allow the case to proceed in this somewhat reduced state,

8

however, for three reasons. First of all, with regard to some of the incidents, Elliott quite clearly has ignored the Court's previous directive to make a reasonable effort to distinguish among the roles of the various defendants. This is not a serious concern, at least at this point, with regard to incidents where Elliott has named the members of the TDF behavioral committee; the members are unlikely to have played distinct roles in hearing and making decisions on charges imposed against Elliott. It is, however, a serious concern with regard to the two incidents in which Elliott basically accuses numerous defendants of writing the same allegedly false report: the July 2001 "softball" incident in which he charges seven defendants with writing a false report, and the May 2002 "typewriter" incident in which he similarly accuses five defendants. These contentions are the epitome of a malicious allegation within the meaning of §1915(e)(2) – that is, one in which the plaintiff acts for purposes of harassment and disparagement. *See Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999). Because Elliott has not complied with this Court's specific directive in this regard, the claims against the alleged false-report-writers concerning those incidents – Harvel, Southward, Godfrey, Kerr, Haage, Thompson, Graham, Olsen, and Collins – are dismissed pursuant to §1915(e)(2). This leaves claims against one report-writer (Cobb), three officers who assisted in placing Elliott in seclusion (Brown, Puchalski, and Martin), and twenty-three behavioral committee members and others claimed to have imposed discipline: Budz (3 incidents), Stewart (2 incidents), Clairmont (1 incident), Toole (3 incidents), Wood (1 incident), Heinze (4 incidents), Glotz (1 incident), Marx (1 incident), Bronstein (1 incident), Proctor (4 incidents), Brucker (3 incidents), Sun (3 incidents), Finn (2 incidents), Guest (2 incidents), Chakin (1 incident), Travis (3 incidents), Evenson (1 incident), Dobier (3 incidents), Speaker (1 incident), Washington (1 incident), Maun (1 incident), Hopson (1 incident), and Monahan (1

incident).

Second, with regard to the July 2001, November 28, 2001, January 30, 2002, and May 6, 2002 incidents, Elliott refers generally to a "reduction in status" without identifying the specific adverse consequences that were imposed upon him and how long those consequences lasted for each particular incident. Without further elaboration in this regard, the Court will not permit the claims regarding those incidents to proceed. Elliott is directed to file, within twenty-eight days of this order, a separate supplement to his amended complaint in which he describes the consequences that he contends were imposed concerning each of these incidents. The Court will evaluate the supplement promptly upon receipt. The Court reserves the right to determine that some or all of the claims should be brought in separate lawsuits.

Finally, the Court is unwilling to have the taxpayers foot the bill for duplicating Elliott's complaint. He will be required to provide sufficient copies (either photocopies or exact typed or written duplicates) to serve each of defendants as to whom the Court rules the case may proceed. *See generally Jones v. Franzen*, 697 F.2d 801, 803 (7th Cir. 1983). At this point, that involves a maximum of twenty-seven defendants. If Elliott provides copies for fewer than all of the defendants, he will be required to specify which defendants are to receive them (if Elliott gives no direction, the Court will rank-order the defendants in terms of the chronological order of incidents alleged in the amended complaint). The claims against any defendants for whom copies are not provided will be dismissed.

### Conclusion

The Court grants plaintiff's motion for leave to proceed *in forma pauperis* [docket # 3-1]. Pursuant to 28 U.S.C. §1915(e)(2), plaintiff's claims regarding the incidents of September-

10

November 2000, April 5, 2001, and March 27, 2002 are dismissed, and his claims regarding the incidents of January 2001, May 9, 2001, July 2001, and May 6, 2002 are dismissed in part as detailed above. As directed above, plaintiff is directed to file a separate supplement to his complaint on or before October 22, 2003 with regard to the July 2001, November 28, 2001, January 30, 2002, and May 6, 2002 incidents. Plaintiff's motion for appointment of counsel [docket #7-1] is denied without prejudice to renewal following defendants' filing of responsive pleadings so that the Court can make a proper determination whether appointed counsel is necessary. Plaintiff's motion to waive copies [docket #8-1] is denied. Summons shall not issue at this time.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 24, 2003